Filed 6/5/24  In re A.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082662 |
| Plaintiff and Respondent, | (Super.Ct.No. J295833) |
| v. | OPINION |
| R.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Conditionally reversed and remanded with directions.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

R.G. (mother) appeals from the juvenile court's order terminating her parental rights to her now 18-month-old daughter, A.G. (See Welf. & Inst. Code,[1] § 366.26.) Mother challenges the termination order on grounds that San Bernardino County Children and Family Services (CFS) social workers and the juvenile court failed to inquire of paternal relatives regarding A.G.'s Native American ancestry. Specifically, they failed to do so despite contact with A.G.'s paternal aunt (hereafter Aunt) and despite the paternal grandmother (hereafter PGM) claiming Cherokee ancestry after initially denying American Indian background.

As we briefly explain *post*, this court remains divided on whether a protective custody warrant (§ 340) makes a difference in whether CFS's duty of inquiry regarding potential Native American ancestry includes extended family members. The question is pending before the Supreme Court. (*In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*) [no inquiry duty], review granted July 26, 2023, S280572 [lead case].) In the meantime, when as here the panel is unanimous or by a majority finds that inquiry is required by California law (§ 224.2, subd. (b)) to effectuate the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), conditional reversal is required, absent harmless error. (*In re Delila D.* (2023) 93 Cal.App.5th 953 [inquiry duty applies] (*Delila D.*), review granted Sept. 27, 2023, S281447.)

The error was prejudicial here, where CFS contacted Aunt but made no ICWA inquiry. (*Delila D.*, *supra*, 93 Cal.App.5th at p. 976; see *In re Benjamin M.* (2021)

---

[1] All further statutory references are to the Welfare and Institutions Code.

70 Cal.App.5th 735 (*Benjamin M.*) [governing harmless error standard].) As we also explain, CFS's failure to investigate PGM's updated claim of Native American ancestry independently requires reversal. Consequently, the juvenile court's termination order is conditionally reversed to correct the inquiry errors, subject to reinstatement as we spell out in our disposition below.

FACTUAL AND PROCEDURAL BACKGROUND

Because mother raises only the ICWA issue, we limit our background discussion to a brief sketch of the proceedings.

Dependency proceedings involving A.G.'s siblings, N.B. and D.B., were already pending before A.G. was born. In October 2022, the juvenile court terminated mother's reunification services with those siblings, and scheduled a permanency planning selection and implementation hearing (hereafter .26 hearing) (see § 366.26). The siblings were placed with relatives, and A.G. was born soon thereafter. The court had previously terminated reunification services between the siblings and their father, B.B., who was also A.G.'s father.

In January 2023, protective custody warrants issued first for the siblings and then for A.G. The warrants were based on evidence that mother physically abused the children and that the relative caregivers neglected them in permitting mother unsupervised visits, including overnight and through weekends, against the juvenile court's orders. Bruises were evident on one sibling's cheek and leg; that sibling was only a year old.

Along with obtaining the warrants, CFS filed a dependency petition as to A.G., who initially could not be located when mother claimed she was with other relatives. After the juvenile court issued a new protective custody warrant and referred the matter to the agency's child abduction unit, A.G. was found and placed in foster care.

In February 2023, CFS filed an amended petition as to A.G. (§ 300, subds. (b)(1), (g), (j).) The petition added allegations that mother and father had a history of engaging in domestic violence, as did father and the maternal grandparents when mother previously allowed unsupervised contact between A.G.'s siblings and father in violation of the juvenile court's orders.

At A.G.'s jurisdiction and disposition hearing in April 2023, the juvenile court found she required dependency protection, bypassed reunification services for mother and father, and set a .26 hearing for A.G. The court held the .26 hearing in November 2023. The court terminated mother's and father's parental rights at the hearing, which only mother now appeals.

The relevant ICWA-related background is similarly brief.

As reflected in A.G.'s detention report, father denied Native American ancestry in the siblings' proceedings, and so did PGM.

Mother on the other hand reported in those proceedings that she was a registered member of the Fort Mojave Indian Tribe (FMIT). An FMIT social worker met with mother and a CFS social worker to confirm that N.B. and D.B. did not qualify for FMIT enrollment because of the tribe's blood quantum requirement. Nevertheless, as reflected

4

in CFS's report to the juvenile court for A.G.'s detention hearing, the tribe was "providing [unspecified] resources and assisting with finding relatives, or tribal members, for placement to honor the mother's enrollment and the children as descendants." CFS advised the FMIT social worker of the date of A.G.'s detention hearing so he could participate remotely.

On the hearing date, mother and an FMIT representative both reported that, like her siblings, A.G. was ineligible for membership. The juvenile court found ICWA did not apply as of that date, but that an FMIT representative could appear as a friend of the court.[2]

Soon after A.G.'s detention hearing, PGM gave CFS an update. The social worker's report for A.G.'s jurisdiction and disposition hearing stated that PGM "reported she heard her family may have Cherokee on her father's side, but her father passed when she was seventeen (17) years old."

Father filed a Parental Notice of Indian Status, Judicial Council form ICWA-020, with the juvenile court denying Native American ancestry. He also filed with that form an information sheet on which he provided contact numbers for PGM, Aunt, and for a person he identified as A.G.'s "uncle," without specifying whether he was on the paternal or maternal side. (Mother asserts no inquiry error as to the uncle, only Aunt and PGM.)

---

[2] The parties do not mention further FMIT participation, if any; mother does not claim ICWA error of any kind regarding A.G.'s matrilineal tribal background.

At the jurisdiction and disposition hearing in April 2023, the juvenile court found ICWA "may" apply and ordered CFS "to continue to comply with its duty of inquiry." (All caps omitted.)

Subsequently, in the course of terminating parental rights at the .26 hearing in November 2023, the court found that ICWA did not apply.

DISCUSSION

Mother contends CFS's failure to make any inquiry of Aunt regarding A.G.'s Indian background requires reversal, particularly because CFS did not investigate when PGM updated CFS with information indicating she had Indian ancestry.[3]

As noted, this court is divided on the effect, if any, of a state custody warrant (§ 340) on whether extended relatives must be asked about a child's Indian heritage when the state keeps the child in foster care. (Compare, e.g., *Delila D.*, *supra*, 93 Cal.App.5th 953 with, e.g., *Ja.O.*, *supra*, 91 Cal.App.5th 672.) We need not belabor the divide, as this case presents no occasion to attempt to refine or bridge it. It is enough that a majority or more here concludes *Delila D.* controls. Thus, the existence of a warrant does not obviate CFS's failure to inquire of Aunt when it had the chance, nor does it excuse the agency's lack of inquiry when PGM disclosed Cherokee heritage.

The inquiry error as to these relatives was not harmless. The standard for assessing prejudice for ICWA-related inquiry error is itself subject to conflicting

---

[3] ICWA (enacted in the 1970's) and corresponding California statutes use the term "Indian," so we regularly do the same for consistency. "[M]any" stakeholders and policymakers now prefer other identifying language "such as 'Native American' or 'indigenous'" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739, fn. 1), which we also use.

6

decisions statewide and is under review by the high court. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-782, review granted Sept. 21, 2022, S275578).)

In following *Delila D.*, we similarly follow its prejudice analysis, which applied the standard articulated in *Benjamin M.* As the latter explained, failing to ask extended family members about Indian ancestry is prejudicial if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

In *Delila D.*, where the parents denied Native American heritage just as father did here, the majority explained the social services agency still "violated [section] 224.2[, subdivision] (b)'s clear mandate by failing to ask the maternal uncle whether Delila may have any Indian ancestry." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 976.) Because the uncle was "readily available" for inquiry and, as such, "could have meaningful information about Delila's heritage, . . . remand [wa]s necessary." (*Ibid.*) The same is true here as to Aunt. CFS does not dispute she remained readily available after CFS asked her about paternal family history of illegal drug use, but omitted any ICWA inquiry. Remand is therefore necessary to make the ICWA inquiry.

Resisting this conclusion, respondent asserts that contacting Aunt "would not bear meaningfully on whether A.G. [is] an Indian child" because "[t]wo people have already provided responses." Namely, "[f]ather denied any Indian ancestry and paternal grandmother's vague claim was dubious."

7

This challenge is without merit, both as to father and PGM. Failure to inquire is error precisely because "extended family members can have tribal information the parents lack, or have forgotten, or refuse to divulge." (*In re S.S.* (2023) 90 Cal.App.5th 694, 701 [the mother there "denied having Indian ancestry, but . . . the maternal aunt reported the possibility of Yaqui ancestry"]; accord, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) Thus, "[w]hile we cannot know how [Aunt] would answer the inquiry, [her] answer is likely to bear meaningfully on the determination at issue about [her] brother." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.)

As to PGM, respondent relies on *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*). There, Division One of the Second District found that the maternal great-aunt's statement that she "'may have had Cherokee heritage'" through her parents, who were deceased, was insufficient to trigger inquiry in conjunction with the mother's similar statements that she "'may have Indian ancestry'" and had been "'told that [her] mother had Cherokee [ancestry].'" (*Id.* at p. 888.) Respondent argues the same conclusion is required where PGM updated her earlier denial of Indian ancestry to say only that she had "*heard* her family *may* have Cherokee on her father's side, *but her father passed* when she was seventeen (17) years old." (Italics added.)

*Austin J.* is unpersuasive for several reasons. First, as this court has observed, it is premised on a "narrow reading of the kind of information sufficient to trigger the duty of further inquiry" when a relative provides indigenous family history. (*In re S.R.* (2021) 64 Cal.App.5th 303, 316 (*S.R.*).) *Austin J.* unduly requires evidence of a parent's or

8

child's enrollment as a member of a tribe in assessing whether a dependent is or may be an Indian child under ICWA and state law. (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 888-889.) As *S.R.* explained, however, the relevant "statutory scheme plainly treats evidence of Indian ancestry as relevant to [a] tribe's determination about the child's status." (*S.R.*, at p. 317.) Precisely because a tribe in which a dependent child "'*may be eligible for membership*'" (*ibid.*) ultimately makes that determination (*id.* at p. 316), child protective agencies are "charged with obtaining information to make that right meaningful." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) Obtaining "'biographical data (that is, information about ancestors and ancestry)'" is therefore crucial to adequate agency inquiry. (*S.R.*, at p. 316.)

Second, PGM's change in reporting regarding Native American family history itself warranted inquiry. (See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404-405 (*Josiah T.*) [further inquiry required when paternal grandmother disclosed and later denied Cherokee ancestry].) The fact that a relative disclaims Indian heritage "is not an automatic ICWA free pass" where the relative has also made affirmative statements; to the contrary, the agency "may not rely on the denial alone without making some effort to clarify the relative's claim." (*Id.* at p. 405.) *Josiah T.* is instructive. There, the "paternal grandmother's representation that she had Cherokee ancestry through her grandmother was specific enough to trigger the duty of further inquiry." (*Id.* at p. 404.) The same is true here.

Third, this was not a scenario where, with PGM's father being deceased, CFS had no viable lead to pursue. (Cf. *Austin J.*, *supra*, 47 Cal.App.5th at p. 887 [great-aunt's parents deceased; appellate court silent about other relatives or leads]; see *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1468 [family lore insufficient].) At a minimum, CFS could turn to Aunt, whom it had never asked for relevant information. CFS also must actively inquire of PGM, who may be able to provide relevant biographical details about her father and his tribal affiliation, or she may be able to point to other relatives in addition to Aunt. (See *Josiah T.*, *supra*, 71 Cal.App.5th at p. 405 [duty to act on "'additional information'" is "'affirmative'"; prejudicial error where agency "did nothing about paternal grandmother's disclosure of Cherokee ancestry"].)

For the foregoing reasons, CFS's dual failures to inquire of Aunt and to follow up on PGM's disclosure of Cherokee ancestry require conditional reversal of the order terminating parental rights. Though father did not appeal, reversal of the termination order operates to his benefit as well (see Cal. Rules of Court, rule 5.725(a)(1), (f)), unless and until the order is reinstated.[4] (*In re Mary G.* (2007) 151 Cal.App.4th 184, 208.)

---

[4] Mother also asserts the juvenile court's failure to ask father whether he had Indian ancestry when he appeared in court was further erroneous, but in light of the necessity of remand, we do not pass on this question because any error would have been harmless had inquiry been made of the paternal relatives.

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed. On remand, the court shall direct CFS to provide the court, if it has not already done so, with a supplemental statement or report of CFS's efforts to obtain information from Aunt and PGM regarding A.G.'s Native American ancestry. If, after completing this inquiry, neither CFS nor the court has reason to believe or know that A.G. is an Indian child, the order terminating parental rights to A.G. shall be reinstated forthwith. If instead the court has reason to believe that A.G. is an Indian child, the court shall proceed in compliance with ICWA and corresponding state law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.